on this afternoon's oral argument calendar, Sienega v. State of California. Do we have both counsel on or is it...? Your Honor, Rob Goldstein appearing on behalf of Mr. Sienega. I'm trying to start my video, but it's telling me the host has stopped it. Okay. Thank you, Your Honor. This case for Mr. Sienega, at the heart of it, is about economic and racial equality. What judicial nullification of allowances of discharge does is it denies a fresh start for a debtor. And the denying of the fresh start denies the opportunity for economic equality. And given in California, which is what we're dealing with with the Franchise Tax Board, the makeup of California is 60 percent people of color, persons of color. And so when we deny economic opportunity, it's going to disproportionately affect those persons of color. What we urge this court to adopt is a test for what is a return prepared under 6020A that a return prepared under 6020A can actually pass. The Bapelot adopted a test that not even a return under 6020A can pass. It adopted the Beer Test. And pronged through the Beer Test requires that the return provide the information sufficient to calculate the tax due to the tax agency. And under 6020A, what's required is the taxpayer provides their tax information. So what the BAP did is basically it never even mentioned 6020A at all, provided no analysis, and didn't even do an analysis of whether 6020A adopts the test or satisfies the test that it adopted. And it doesn't. The other thing that we were. Would you agree that California law does not have an equivalent to 6020A in that it does not allow the franchise board to prepare a return with the cooperation of the taxpayer? Two things to that point, Your Honor. One is the statute itself under the Bankruptcy Code, 523A19, does not require a specific statute. It requires a California law. Excuse me. My question was, do you agree that California law doesn't contain a similar provision to section 6020A in that tool which would allow the California Franchise Tax Board to prepare a return with the cooperation of the taxpayer? I respectfully disagree because. So what statute do you rely on in California? I'm relying on the law, meaning a legal assessment. I'm looking at whether a legal assessment occurred. I understand your argument. I just want to make sure we're on common ground. There's no statute, correct? There is no statute, one specific statute. There are many statutes combined which allowed exactly what to occur to occur, meaning to end up with a valid statute. So do you believe the Franchise Tax Board can prepare a return on behalf of a taxpayer in the state of California? I do because the Notice of Proposed Assessment is the return itself for two reasons. One is it literally details every single detail that a return does. And number two. I understand your argument that the notice is equivalent to the information that would be contained in a return. But I'm baffled at why you would not concede that California law doesn't permit the board to actually file a return on behalf of the taxpayer. I'm not conceding that. They do have the right to. Do you have any examples where the board actually prepared a return? Well, again, under Springfield, the definition of a return is any legal document, any legal necessary document, and the Notice of Proposed Assessment was the necessary legal document in response to when the taxpayer or my client submitted their information. So if we're looking for a return as a Form 540 or 1040, that's not the definition under Ninth Circuit law. It's the required legal form. And once my client submitted the information, the Notice of Proposed Assessment became that required legal form. But if the law requires the individual to make a return, how has the individual made such a return? Because I think you've indicated, well, there was no return filed, but the law requires that. So you're sidestepping more than one statute here. That assessment that there was no return filed. Further, if we actually look at 6020A, the taxpayer does not prepare the return. We can look at a lot of statutes. I'm just trying to get your focus on the statute here. I mean, your client did not make a return, correct? Again, our argument is the process that my client went through is similar to a return prepared pursuant to 6020A. A return prepared pursuant to 6020A, the taxpayer does not prepare the return. The IRS prepares it. That's correct. I think I'm getting back to my original question. There's no analogous procedure in California, right? Well, that's actually not true because if we turn to Berkovich, which is the court opinion that was issued last month, the exact same substance that my client submitted to the FTB qualifies now under the Beard Test. And under Hatton, anything that qualifies under the Beard Test is, in fact, a return. So per Berkovich, what my client submitted is actually a return. What's really ironic is the FTB argued in the Berkovich case that the submission, the exact same substance my client submitted is a return. And at the lower court at the BAP, the FTB argued the exact opposite position, that it's not a return. So the FTB is talking really out of both sides of its mouth. And the difference between Berkovich and this current case, Mr. Sienega's case, is that in Berkovich, they adopted a requirement that you have to file a return and a notice or assessment when California law does not actually require an additional filing if the original filing incorporates all the IRS changes because under 18622A, the second sentence nullifies the first sentence if any additional submission will not increase the tax due. Given that Mr. Sienega incorporated all the IRS information, at that point in time, there was nothing more he could file that would increase the tax due. If there was, frankly, the Franchise Tax Board would have and should have audited, but they didn't because we've already incorporated all the information that's available into the original filing. So Berkovich states unequivocally that in substance and form, what my client submitted is a return. So basically your argument is this, if I understand it. Your client didn't file any state tax returns for the relevant years. Your client didn't pay the money due to the State of California for the relevant years. And when it informed the Board that he owed money, that excuses him from paying the money. Because it constitutes a return equivalent to 2060A and, therefore, entitles him to a discharge under 523. Is that your argument? No. Again, I'm not conceding that he didn't file a return. Again, under Berkovich, he did file a return. Did he subtender any money with this return? That's not a question or an inquiry under the Bankruptcy Code. There's nothing that says you have to pay. In fact, what are we doing? We're punishing literally people who are – I'm asking one question and you're answering another question. I'm trying to answer your question, Your Honor. Go ahead. I think you need to look at more intent. Go ahead. Sorry. No, go ahead. Again, making a payment with your return is not part of the inquiry, first off. Second off, if we're literally not allowing discharge here, when my client cooperated, he subjected himself to criminal penalty for doing so. When literally everything that distinguishes 6020A, which is dischargeable from 6020B, which is not, my client meets all three differences. And so if we're going to create a permanently economically indentured status, then sure. Then we have to – then we look at did he make payment, even though that's not part of the inquiry at all under the Bankruptcy Code. In fact, I mean, bankruptcy law exists to give people a fresh start. Judicial notification of an allowance of it, if we're – under Brunio, we're supposed to look very narrowly at exceptions to discharge. Here, we're trying to find ways where the Congress obviously allows discharge, and we're trying to find ways not to allow it, which is the exact opposite of Brunio. And again, just look at 6020A. That's the intent of Congress for 6020B of not discharge. We meet everything for 6020A. If we actually – you know, if we're comparing what's similar to 6020A, let's go through the five things that are similar. One, a return is late. Mr. Sienega's return was late. That happens under 6020A. Two, the taxpayer provides their information to the IRS. Mr. Sienega provided his information to the state. The IRS under 6020A then takes that information and only that information and prepares the original assessment. The FTB's own notice of proposed assessment admits they relied solely on Mr. Sienega's information. So again, we have an exact match. Four, the taxpayer is subject to criminal penalty for false or fraudulent information under 6020A. Under 19706 of the California Code, my client, by participating, was subject to criminal penalty for false or fraudulent information. But your client did not sign anything under penalty of perjury, correct? Actually, under California law, that's not required. Your client did not sign anything under penalty of perjury. And a criminal charge, the fact that criminal charges could have been brought for a false statement, which he didn't sign, is different from penalty, the criminal prosecution for perjury, isn't it? Well, what you're actually signing under criminal statement of perjury is that everything is true and correct. Under California law, it doesn't require a signature if something is false or fraudulent. Just on the submission alone, it's the same. You're basically, here's the difference. Under 6020A, you're subject to criminal penalty. Under 6020B, which is not dischargeable, you're not because the taxpayer bypasses everything. Taxpayer is not participating. Here, under 6020, or in this situation, under 19706, he is subject to criminal penalty. It may not be a penalty of perjury, quote, standard, but really it is because what you're signing under penalty of perjury is everything is true and correct. Under 19706, it's the exact same thing. It's saying if anything is false or fraudulent, I could be held criminally responsible. So everything that happens under 6020A literally happened here. What happens under 6020B, which Congress does not want discharge, none of it happened here. He didn't bypass this entire proceeding. So, again, if we're going to look, frankly, if we're going to look for ways to deny discharge and judicially nullify what Congress clearly wants, sure. Then let's violate the Brunia standard and let's, you know, narrow this to the head of a pin. But, again, we're supposed to read exceptions of discharge narrowly. Congress only wants something similar. They don't require anything identical. In fact, bankruptcy courts. Where do you get that in the legislative history of 523? There's not any statements. It's in the code. I'm sorry? I said no. There's nothing in the legislative history of 523 that supports what you just said. There's nothing in the legislative history that doesn't support what I just said. It's silent. So what we should do is look at the statute. And when Congress amended it in 2005, they specifically denied discharge under 6020B. They specifically allowed discharge in 6020A. So if we look, again, at the three things that distinguish between 6020A and 6020B, we satisfy all three. So the shame would be we did everything that 6020A requires, the three things that are different, yet if this court denies discharge, you're going to throw my client into the 6020B, you know, pond, even though nothing happened like 6020B. So basically we're going to deny him the discharge for something that's not even close, not even similar. If anything's similar, it's actually identical to 6020A, not just similar. But now we're going to put him in 6020B. I think that's inherently unfair. And, again, it's basically creating economic indenture to the state. If that's what we're after, if we're looking for the weakest to basically put the weakest economic people who have just done bankruptcy to be, you know, economically indentured to the state of California and not give a fresh start, sure, deny discharge. Okay. We'll hear from the board. Good afternoon, and may it please the Court. My name is Donnie Lay, Counsel for the Appellee of the California Franchise Tax Board. I had some prepared remarks, but the Court's questions to Mr. Goldstein earlier pretty much hit the nail on the head, so I'm going to keep my remarks very, very short. And the point I want to make is this. This court or this case is not difficult. Mr. Sienega never filed California tax returns for the years at issue, and the board never filed those returns on Mr. Sienega's behalf. Those returns are now over 25 years late, and because Mr. Sienega never filed California income tax returns, those tax debts are now accepted from discharge under Bankruptcy Code Section 523A1B, which requires the filing of an income tax return in order to discharge a tax debt. So with that, unless there are questions for me, I respectfully request that this court affirm the rulings made below in the board's favor. Thank you. Is it your position that the board could file a tax return based on the information provided? No. There's no procedure that authorizes the board to file a tax return. Okay. Thank you. We'll hear rebuttal. Yes, Your Honor. Again, the Berkovich decision literally overrules every finding that this is not a return. The exact substance of what Mr. Sienega filed is a return. He just doesn't have the requirement to file anything additional, which was the problem for the debtor in Berkovich. But, you know, it seems almost impossible for the court to accept Berkovich and reach that finding and not find that the exact same document we submitted here is a return. Further, I have to return to Springfield where it says the document that's legally required is a return. And here, when Mr. Sienega submitted his information, the FTB was required under per U.S. Postal Service Supreme Court case to issue a notice of proposed assessment. That was the response. The proposed assessment detailed everything that a return does. And as a result, Mr. Sienega subjected himself to criminal penalty. Is it a penalty of perjury? No. Is it similar? Absolutely, because if it's false or fraudulent, he could go to jail. So what Congress wanted was just something similar. Very good. The case just argued will be submitted for decision and will be in recess for the afternoon.
judges: THOMAS, McKEOWN, Molloy